UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ASHLEY KINCAID EVE and CASEY WILSON, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| *vs.* | )   No. 1:21-cv-01721-JMS-MJD |
| | ) |
| WADE BURTRON, TAYLOR MCCORKLE, JOSH | ) |
| HARREL, OFFICER THOMAS, JOEL RUSH, | ) |
| WESTFIELD POLICE DEPARTMENT, CITY OF | ) |
| WESTFIELD, and JOHN DOE OFFICERS 1-10, | ) |
| | ) |
| *Defendants*. | ) |

## <u>ORDER</u>

On the evening of June 16, 2019, after celebrating her passing the Indiana Bar Examination, Plaintiff Ashley Kincaid Eve was riding home in a car driven by her friend, Plaintiff Casey Wilson. Ms. Wilson was displaying signs of driving while intoxicated and Defendant Westfield Police Department ("WPD") Officer Wade Burtron observed Ms. Wilson's erratic driving and initiated a traffic stop.  During the course of the stop, Ms. Eve repeatedly told Officer Burtron and other responding officers that she was an attorney, questioned their actions, and attempted to advise Ms. Wilson regarding her responses to the officers' instructions.  Ms. Eve was ordered to stay in Ms. Wilson's car, but she forcibly pushed the door open to exit the car, hitting it into one of the officers. As a result, she was handcuffed and placed in a police car where she yelled and berated the officers. Ms. Eve managed to disconnect her seat belt, though handcuffed, open the police car's door, and exit the police car.  She was ultimately arrested, faced various criminal charges, and was convicted of Resisting Law Enforcement.  Ms. Wilson was arrested for Operating a Vehicle While Intoxicated Endangering a Person and entered a guilty plea.

Ms. Eve and Ms. Wilson initiated this litigation on June 14, 2021, asserting numerous constitutional and other claims against Defendants Officer Burtron, WPD Officer Taylor McCorkle, WPD Officer Josh Harrell,[1] and WPD Officer Jeremy Thomas (collectively, "the Officers"); John Doe Officers 1-10; the City of Westfield; WPD; and WPD Chief of Police Joel Rush, in his official capacity.  [Filing No. 1.]  Defendants have filed a Motion for Summary Judgment, [Filing No. 77], which is now ripe for the Court's review.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  "'Summary judgment is not a time to be coy.'"  *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment

---

[1] Plaintiffs spell Officer Harrell's last name "Harrel" in their Complaint, but it appears to be spelled "Harrell." [*See* Filing No. 77-8.]  The Court **DIRECTS** the Clerk to correct the spelling of Officer Harrell's last name on the docket.

because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the

party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).  The Court notes that much of the encounter between Plaintiffs and Defendants was captured on either the dash cameras of the Officers' police cars or on the Officers' body cameras.  When the record evidence includes a videotape of the relevant events, the Court should not adopt the non-movant's version of the facts when that version contradicts what is depicted on the videotape. *Scott v. Harris*, 550 U.S. 372, 379-80 (2007).  The Court has reviewed the dashboard camera and body camera footage from the Officers who were on the scene of the June 16, 2019 encounter.  It has also reviewed the opinion of the Indiana Court of Appeals in Ms. Eve's appeal from her conviction for Resisting Law Enforcement and finds that the Indiana Court of Appeals' description of the June 16, 2019 encounter is consistent with the video evidence.  The Court relies substantially on that description below.

## A.    WPD Policies

WPD has adopted several General Orders that all of its officers must follow, including:

- General Order 1.1.1, which requires WPD officers to uphold and enforce the law in a fair, honest, and impartial manner and in accordance with the United States Constitution, the Indiana Constitution, existing law, and WPD General Orders.  [Filing No. 77-16.]

- General Order 1.2.3, which requires officers to be mindful of the rights and protections afforded all persons under the United States Constitution, the Indiana Constitution, and state law.  It also provides that *Miranda* warnings are normally not required during fact finding questioning, witness interviews, routine traffic stops, or field type interviews, unless the questioning "becomes accusatorial and the suspect's freedom of movement is restricted."  Further, it provides that an interrogation shall stop if at any time a suspect indicates that they want to consult with an attorney.  [Filing No. 77-17.]

- General Order 1.2.5, which provides that an officer may arrest an individual when they have probable cause to believe that the person has violated the provisions of Indiana Code § 9-30-5, Operating a Vehicle While Intoxicated, and when the officer has probable cause to believe that the individual is committing or attempting to commit a misdemeanor in the officer's presence.  [Filing No. 77-18.]

4

- General Order 61.1.11, which provides that "[i]t shall be the policy of the [WPD] to detect, investigate and arrest drivers who are found to be impaired as a result of alcohol or drugs." [Filing No. 77-19.]

## B.  The June 16, 2019 Incident

At approximately 12:30 a.m. on June 16, 2019, Officer Wade Burtron with the [WPD] was patrolling in his police vehicle.  While he was driving behind another vehicle, he observed that vehicle disregard a stop sign and drive off the roadside twice.  Officer Burtron initiated a traffic stop, and his vehicle camera recorded the stop.  When Officer Burtron approached the driver's side of the vehicle, he saw that three people were in the car.  He asked all of the occupants for their identification, and they all provided it to him.  [Ms.] Eve, who was in the front passenger seat, informed Officer Burtron that she is an attorney.  Officer Burtron conducted three "pre-exit" sobriety tests on the driver, [Ms.] Wilson.  Officer Burtron then returned to his vehicle to conduct record searches on the occupants of the car.  In the meantime, Officer Taylor McCorkle arrived at the scene to assist Officer Burtron.

Officers Burtron and McCorkle approached the vehicle.  Officer Burtron went to the driver's side, and Officer McCorkle went to the passenger's side.  Officer Burtron asked [Ms.] Wilson to exit the vehicle so that he could conduct an operating-while-intoxicated investigation.  [Ms.] Eve began to speak loudly and advised [Ms.] Wilson that she was not required to exit the vehicle as "everything was voluntary."  Officer Burtron informed [Ms.] Wilson and [Ms.] Eve that [Ms.] Wilson was not required to submit to field sobriety tests, but she was required to exit the vehicle as directed.  [Ms.] Eve stated that she would be exiting the vehicle with [Ms.] Wilson, as she was [Ms.] Wilson's attorney.  Officers Burtron and McCorkle both instructed [Ms.] Eve to stay inside the vehicle.  In the meantime, Officer Jeremy Thomas had also arrived on the scene and was standing next to Officer Burtron.

[Ms.] Wilson exited the vehicle, and [Ms.] Eve tried to open her passenger side car door twice, but Officer McCorkle held the door shut from the outside.  Officer McCorkle again instructed [Ms.] Eve to remain in the vehicle.  Officer Thomas came over to the passenger's side of the vehicle to assist Officer McCorkle.  Officers Burtron and McCorkle then observed [Ms.] Eve "raise[ ] her foot, put it on the [passenger's side] door, and kick[ ] the door open."  As [Ms.] Eve forcibly pushed the door open, Office[r] McCorkle was pushed back by the force of the door.

[Ms.] Eve exited the vehicle and Officer Burtron instructed the other officers to detain [Ms.] Eve.  Officers Thomas and McCorkle attempted to place [Ms.] Eve in handcuffs, but [Ms.] Eve pulled her arms away from them.  The officers eventually placed the handcuffs on [Ms.] Eve and, while handcuffed, [Ms.] Eve swung around and yelled in Officer Thomas's face.  Officer Burtron then briefly left [Ms.] Wilson standing alone and walked toward [Ms.] Eve to assist the other officers.  [Ms.] Eve was placed in [Officer] McCorkle's vehicle.  At one point [Ms.] Eve opened the

unlocked car door and exited the vehicle, but [Officer] McCorkle then placed [Ms.] Eve back inside his vehicle.

*Eve v. State*, 2023 WL 2506469, at *1-2 (Ind. Ct. App. Mar. 15, 2023) (citations omitted).[2]

### C.   Ms. Wilson and Ms. Eve Are Charged and Convicted

Ms. Wilson's toxicology report reflected that she had a blood alcohol content of .235. [Filing No. 77-6 at 7.]   On June 20, 2019, she was charged with Operating a Vehicle While Intoxicated Endangering a Person ("OWI").   [Filing No. 77-9 (*State of Indiana v. Casey Lynn Wilson*, Cause No. 29D05-1906-CM-004865).]   She pled guilty to that charge on September 16, 2019.   [Filing No. 77-10.]

Ms. Eve, who admitted to being too intoxicated to drive on the evening of June 16, 2019, was charged with Battery Against a Public Safety Official, Resisting Law Enforcement, and Disorderly Conduct.   [Filing No. 77-6 at 11; Filing No. 77-11 (*State of Indiana v. Ashley Ann Eve*, Cause No. 29D05-1906-F6-004864).]   On August 17, 2020, Ms. Eve entered into a Pre-Trial Diversion Agreement which provided, in part:

> EVE, UNDER PENALTY OF PERJURY, ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT SHE IS ADMITTING THE TRUTHFULNESS OF THE CHARGES AGAINST HER AND ACKNOWLEDGES THAT SUCH

---

[2] The Court adds to the Indiana Court of Appeals' account of the June 16, 2019 incident some further details to provide a bigger picture of Ms. Eve's behavior during the incident.  Specifically, Ms. Eve stated that she was an attorney, through slurred speech, at least 20 times during her encounter with Defendants.  She was also belligerent and yelled degrading and abusive comments at the Officers.  Officer McCorkle received the brunt of Ms. Eve's tirade during the approximately 15-minute drive from the scene to the WPD station, including Ms. Eve calling him an a**hole multiple times; calling him a "piece of shit" at least 20 times; telling him he was "going to go the f**k down" 2 times; telling him he was going to get fired 3 times; telling him he "didn't deserve [his] f**king badge"; bragging that she "know[s] a lot of f**king important people," including judges, prosecutors, and state representatives; saying "I'm going to take you down and I can't wait to do that"; telling him she was going to "sue the living f**k out of" him; and telling him she was going to "rock [his] f**king world in f**king court."  Officer McCorkle did not respond to Ms. Eve's degrading and abusive comments during the drive to the WPD station.  The only time he spoke to her was to ask her for her address and phone number – both of which she refused to provide.

ADMISSION MAY BE USED AGAINST HER IF PROSECUTION OF THESE
CHARGES IS RESUMED BY REASON OF TERMINATION FROM THE
PRETRIAL DIVERSION PROGRAM.

[Filing No. 77-12 at 5.]

As part of the Pre-Trial Diversion Agreement, Ms. Eve was required to perform 100 hours

of community service by April 15, 2021 at a work-site pre-approved by the Diversion Coordinator.

[Filing No. 77-12 at 6.] She failed to do so and, consequently, the State withdrew her diversion.

[Filing No. 77-13.] The State then re-opened the charge of Resisting Law Enforcement and a

bench trial on that charge was held in Hamilton County Superior Court on January 13, 2022. [*See*

Filing No. 77-6.] Ms. Eve was found guilty of Resisting Law Enforcement, and Hamilton County

Superior Court Judge David Najjar found:

> [B]ased upon testimony, the evidence including the video, especially the video – as
> [defense counsel] said, it is the, oftentimes, the best evidence – that your actions in
> getting out of the vehicle upon the stop initially, after being given what the Court
> finds to be lawful command by the officers, by way of pushing the door open with
> your feet against Officer McCorkle and your actions in making it difficult for the
> officers to handcuff you. And then, once handcuffed and seat belted and restrained
> inside of the police cruiser, removing – your removal of the restraint, accessing the
> door handle and leaving the police cruiser while you were detained, that all of these
> actions constituted the resisting law enforcement as charged in the information, and
> that the State has proved its burden beyond a reasonable doubt as it relates to Count
> 1, resisting law enforcement.

[Filing No. 77-6 at 21-22.]

Ms. Eve then appealed her conviction, and the Indiana Court of Appeals affirmed the trial

court's decision, stating:

> The police did not violate [Ms.] Eve's Fourth Amendment right to be free from an
> unreasonable seizure when they prevented her from opening the car door during a
> lawful roadside stop; therefore, the court did not abuse its discretion when it
> admitted evidence of [Ms.] Eve's actions on [June] 16, 2019. In addition, there was
> sufficient evidence that the police were lawfully engaged in the exercise of their
> duties prior to [Ms.] Eve forcing her car door open. Thus, as the lawfulness of the
> police action is the only element of resisting law enforcement that [Ms.] Eve
> challenges, there was sufficient evidence to support her conviction.

*Eve*, 2023 WL 2506469, at *6.  Ms. Eve filed a Petition to Transfer, which the Indiana Supreme

Court denied.  *Eve v. State*, 211 N.E.3d 1003 (Ind. 2023).

On May 5, 2022, Ms. Eve was indefinitely suspended from the practice of law in Indiana

as a result of her conviction for Resisting Law Enforcement.  *In re: Ashley K. Eve*, 185 N.E.3d 865

(Ind. 2022).

### D.    This Lawsuit

Plaintiffs initiated this lawsuit on June 14, 2021, setting forth the following claims:

- On behalf of Ms. Eve:

  o A claim under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution against Officers Burtron, McCorkle, Thomas, Harrell, and Does 1-10 for use of excessive force, unreasonable seizure, unlawful detention, and unlawful arrest;

  o A § 1983 claim for violation of the First Amendment against Officers Burtron, McCorkle, Thomas, Harrell, and Does 1-10 for detaining and punishing her for giving and/or attempting to give legal advice to Ms. Wilson while Ms. Wilson was being interrogated on the scene;

  o A § 1983 claim under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), against the City of Westfield, WPD, and Chief Rush;

  o A § 1983 claim against Officers McCorkle, Thomas, Harrell, and Does 1-10 for failing to intervene with Officer Burtron's alleged constitutional violations;

  o Violation of Article 1, Sections 9 and 11 of the Indiana Constitution against all Defendants for preventing Ms. Eve from giving Ms. Wilson legal advice on the scene, unreasonably seizing Ms. Eve, and interfering with Ms. Eve's freedom of thought and speech;

- On behalf of Ms. Wilson:

  o A § 1983 claim for violations of the Fifth, Sixth, and Fourteenth Amendments against Officers Burtron, McCorkle, Thomas, and Harrell for denying her the right to counsel;

8

○ A § 1983 claim for violation of the First Amendment right to freedom of association against Officers Burtron, McCorkle, Thomas, and Harrell for preventing her from communicating with Ms. Eve, her attorney;

○ A § 1983 claim under *Monell* against the City of Westfield, WPD, and Chief Rush; and

○ A § 1983 claim against Officers McCorkle, Thomas, Harrell, and Does 1-10 for failing to intervene with Officer Burtron's alleged constitutional violations.

[Filing No. 1 at 17-28.]  Defendants have moved for summary judgment on all of Plaintiffs' claims.

[Filing No. 77.]

### III.
### DISCUSSION

The Court discusses Plaintiffs' numerous claims and Defendants' corresponding arguments below, but notes that its discussion is guided by three main principles.

First, the Court will not permit Plaintiffs to change the theories underlying their claims from those set forth in their Statement of Claims.  At times, as noted below, Plaintiffs allege one theory in their Complaint, another in their Statement of Claims,  and then go back to the theory set forth in their Complaint in their response to Defendants' Motion for Summary Judgment.  This is not fair to Defendants, who have relied on Plaintiffs' characterization of their claims in the Statement of Claims, and the Court will not permit this practice.  Accordingly, Plaintiffs' claims and theories are limited to those set forth in their Statement of Claims.  [Filing No. 75.]  *See Jackson v. Regions Bank*, 838 F. App'x 195, 198 (7th Cir. 2021) (finding "no abuse of discretion in the district court's enforcement of its requirement that [the plaintiff] specifically state [her] theories of relief" in the Statement of Claims).

Second, when Plaintiffs have ignored an argument advanced by Defendants, the Court will find that Plaintiffs have waived any opposition to the argument and will not address the substance

9

of that argument in any detail.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver.").  Plaintiffs' 28-page Complaint sets forth nine claims against various combinations of seven real Defendants and ten fictitious ones.  If Plaintiffs did not address an argument relating to one of those many claims, the Court will assume they have  waived that claim.  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation, [which is] designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.").

Third, Ms. Eve was convicted of Resisting Law Enforcement, appealed her conviction, and the conviction was affirmed.  She is barred by *Heck v. Humphrey*, 512 U.S. 477 (1984), from asserting any claims in this lawsuit that would imply the invalidity of that conviction, including that the Officers did not have probable cause for their actions.  The Supreme Court held in *Heck* that "when a state [defendant] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence," and constitutional claims may only be brought if the plaintiff can show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.  Any argument by Ms. Eve that the Officers lacked probable cause will be disregarded, and the Court will find that any claims she asserts herein that are defeated by the existence of probable cause fail as a matter of law.

The Court now addresses Plaintiffs' claims and Defendants' arguments with those three principles in mind.

### A.    Claims Against WPD

Defendants argue that WPD is not a suable entity.  [Filing No. 80 at 30.]  Plaintiffs do not respond to that argument in their response brief.  [*See* Filing No. 88.]  Accordingly, they have waived any argument in opposition and have forfeited their claims against WPD.  *See Bonte*, 624 F.3d at 466.  In any event, Defendants are correct.  *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (affirming district court's holding that the McCordsville, Indiana Police Department and the Fortville, Indiana Police Department are not suable entities); *Perry v. Thomas*, 2011 WL 693622, at *4 (S.D. Ind. Feb. 18, 2011) (concluding that "[t]he [Indianapolis Metropolitan Police Department] is not a suable entity and thus not a proper party" to an action asserting claims under § 1983 and Indiana law).

The Court **GRANTS** Defendants' Motion for Summary Judgment as to all of Plaintiffs' claims against WPD.

### B.    Constitutional Claims

#### 1.    *Ms. Eve's Claims*

##### a.    Individual Claims Against Officer Harrell

Defendants argue that all of Ms. Eve's constitutional claims against Officer Harrell fail because he was not personally involved in any alleged constitutional deprivations – he "arrived on scene after [Ms.] Eve had been detained and placed in Officer McCorkle's vehicle," "was not present when [Ms.] Wilson's vehicle was pulled over, [or when Ms. Eve] kicked open [Ms.] Wilson's door or was placed in handcuffs," and "never put his hands on [Ms. Eve], and the few statements he made to her do not rise to the level of a First or Fourth Amendment violation." [Filing No. 80 at 14.] Ms. Eve does not respond to this argument in her response brief. [*See* Filing No. 88.]  Accordingly, Ms. Eve has waived any argument in opposition and has forfeited her

constitutional claims against Officer Harrell. *See Bonte*, 624 F.3d at 466. In any event, Defendants are correct that liability under § 1983 requires personal involvement, *see Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017), and that the evidence indicates that Officer Harrell was not personally involved in the acts upon which Ms. Eve bases her constitutional claims.

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Ms. Eve's constitutional claims against Officer Harrell.[3]

### b.    First Amendment Claim Against Remaining Officers

Ms. Eve alleges in her Complaint that the Officers violated her First Amendment rights because her "side-of-the-road lawyering" is protected speech, her rights were violated when the Officers detained and punished her for giving or attempting to give advice to Ms. Wilson, and the Officers' actions in detaining and arresting Ms. Eve were meant to deter protected First Amendment activity in the future. [Filing No. 1 at 18.] In her Statement of Claims, Ms. Eve frames her First Amendment claim as one for "denying [her] the opportunity to observe and comment on the behavior of [the] Officers…during their interactions with the Plaintiffs." [Filing No. 75 at 1.] Based on her Statement of Claims, Ms. Eve's First Amendment claim is limited to one for denying her the opportunity to observe and comment on the behavior of the Officers during their interactions with Plaintiffs. *See Jackson*, 838 F. App'x at 198.

As to that claim, Defendants argue in support of their Motion for Summary Judgment that Ms. Eve "had no right, as a passenger, to force her way out of a vehicle 'to observe and comment' on a valid OWI investigation." [Filing No. 80 at 18.] They note that the evidence shows that the Officers "gave [Ms. Eve] a lawful command to stay inside [Ms.] Wilson's vehicle, and she violated

---

[3] For simplicity, the Court refers to Officers Burtron, McCorkle, and Thomas collectively as "Defendants" or "the Officers" in connection with its discussion of Ms. Eve's remaining constitutional claims.

that lawful command when she kicked the door open and hit Officer McCorkle," that "the criminal court conclusively established that fact," and that "[t]he Indiana Court of Appeals then affirmed that fact." [Filing No. 80 at 19.]

In her response brief, Ms. Eve instead focuses on her retaliatory arrest theory, which she did not set forth in her Statement of Claims as noted above. [Filing No. 88 at 11-14.] She goes on to argue that while the presence of probable cause generally defeats a First Amendment retaliatory arrest claim, there was no probable cause for her arrest and that, even if there was, her circumstances fall within a narrow exception where police officers exploit their police power as a means of suppressing free speech. [Filing No. 88 at 12-14.]

In their reply, Defendants argue that Ms. Eve has "no good-faith basis" to contend that there was not probable cause for her arrest and that "this was not a situation where the officers were annoyed with [Ms.] Eve's protected speech, so they arrested her to prevent her from speaking further." [Filing No. 91 at 5-7.]

Again, the Court notes that Ms. Eve's First Amendment claim is limited to the characterization she set forth in her Statement of Claims – for denying her the opportunity to observe and comment on the Officers' behavior during their interactions with Plaintiffs. "[I]t is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). The Officers lawfully detained Ms. Eve when they instructed her to remain inside the car. Any First Amendment right she had to speak to Ms. Wilson or observe Ms. Wilson's field sobriety tests was limited by the Officers' right to detain Ms. Eve in order to carry out their investigation safely and effectively. *See Am. Civ. Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012) ("It goes without saying that the police may take all reasonable steps to maintain safety and control…and protect the

integrity…of investigations."). Additionally, Ms. Eve did not respond to this argument, so has waived any opposition. *Bonte*, 624 F.3d at 466.

Even if the Court were to consider Ms. Eve's retaliatory arrest theory in connection with her First Amendment claim, the existence of probable cause for Ms. Eve's arrest would defeat that claim. *Nieves v. Bartlett*, 587 U.S. ----, 139 S.Ct. 1715, 1726 (2019) ("The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim."). The Court finds – as the Indiana Court of Appeals did – that Defendants had probable cause to arrest Ms. Eve. The Court has viewed the videos of the June 16, 2019 incident and agrees with the Indiana Court of Appeals' conclusion that "Officers Burtron and McCorkle then observed [Ms.] Eve 'raise[ ] her foot, put it on the [passenger's side] door, and kick[ ] the door open.' As [Ms.] Eve forcibly pushed the door open, Office[r] McCorkle was pushed back by the force of the door." *Eve*, 2023 WL 2506469, at *1. It further agrees that Ms. Eve's pushing of the door with her foot to forcibly open the car door gave the Officers probable cause to arrest her for Resisting Law Enforcement. *See id. at *4*. Ms. Eve is barred by *Heck* from arguing that probable cause was absent. It is also noteworthy that Ms. Eve acknowledged under penalty of perjury by signing her Pretrial Diversion Agreement that she "is admitting the truthfulness of the charges against her and acknowledges that such admission may be used against her if prosecution of these charges is resumed by reason of termination from the pretrial diversion program." [Filing No. 77-12 at 5.] Any argument that there was not probable cause for her arrest is disingenuous and frivolous.

Additionally, Ms. Eve's situation does not fit within the narrow exception discussed by the Supreme Court in *Nieves*, where "officers have probable cause to make arrests, but typically exercise their discretion not to do so." 139 S. Ct. at 1727. Ms. Eve relies on an email from the Officers' counsel to the Hamilton County Prosecutor stating "guess we need burtron to confirm

14

he's allowed people to watch investigations before, but not here because she was interfering and obnoxious," to infer that "Officer Burtron has allowed individuals to watch [field sobriety tests] before" and "[h]e only didn't this time because of Ms. Eve's protected speech." [Filing No. 88 at 7.] But this email is hardly enough to show that Officer Burtron "typically" let people who were behaving as Ms. Eve was watch field sobriety tests, and chose not to do so here in order to suppress Ms. Eve's speech.

The Court **GRANTS** Defendants' Motion for Summary Judgment on Ms. Eve's First Amendment claim.

c.     Fourth and Fourteenth Amendment Claims Against Remaining Officers

In her Complaint, Ms. Eve alleges that the Officers violated her Fourth and Fourteenth Amendments by using excessive force against her, unreasonably seizing her, unreasonably detaining her, and arresting her without probable cause. [Filing No. 1 at 17-18.] In her Statement of Claims, however, she limits her claim to "[v]iolations of the 4th and 14th Amendments...for unreasonable seizure." [Filing No. 75 at 1.] The Court limits her claim to the version set forth in her Statement of Claims. *See Jackson*, 838 F. App'x at 198.

Defendants argue that Ms. Eve's unreasonable seizure claim is barred by *Heck* because she "cannot maintain an unreasonable seizure claim without invalidating her criminal conviction." [Filing No. 80 at 20.] They note that to be convicted of Resisting Law Enforcement, a defendant must knowingly and intentionally resist a law enforcement officer "while the officer is lawfully engaged in the execution of the officer's duties," and that the Indiana Court of Appeals has already found that the Officers did not violate her Fourth Amendment right to be free from an unreasonable seizure when they prevented her from exiting Ms. Wilson's car. [Filing No. 80 at 20-21 (emphasis omitted).]

Ms. Eve argues in her response that she filed this lawsuit "when she thought she was nearing completion of her diversion program," and that constitutional claims related to the crimes for which she was not convicted – "battery and public intoxication" – are not barred by *Heck*. [Filing No. 88 at 14-15.]  As for her unreasonable seizure claim, she argues that she should never have been arrested for "public intoxication or battery" and that the probable cause for those arrests "was cut from whole cloth and entirely a result of the officers' own behaviors – but for the choices the officers made and narratives they crafted to explain them, Ms. Eve's public intoxication and the incidental contact her door made with the officer would never have occurred." [Filing No. 88 at 15-16 (emphasis omitted).]  Ms. Eve also asserts that she is bringing a claim for the use of excessive force during her arrest, pointing to her "slight height and weight" which the Officers could observe, and "clear plastic wrap around her wrist denoting a fresh tattoo" which was "plainly visible." [Filing No. 88 at 16-17.]  Ms. Eve argues that she was placed in handcuffs which were tightened on top of the plastic wrap and caused pain and bruising, that she told the Officers that the handcuffs were too tight, and that they did not loosen them.  [Filing No. 88 at 17.]

As for Ms. Eve's unreasonable seizure claim, Defendants reiterate in their reply that the claim is barred by *Heck*, pointing to the Indiana Court of Appeals' finding that Ms. Eve was not entitled to ignore the Officers' commands that she remain in the car and that the Officers did not violate her constitutional rights by attempting to keep her in the car.  [Filing No. 91 at 9.]  They argue further that Ms. Eve abandoned her excessive force claim in her Statement of Claims and that, in any event, the evidence shows that the Officers did not use excessive force, that her handcuffs were not too tight, and that she "was still able to maneuver her hands enough to escape the front seat of a police vehicle after being detained." [Filing No. 91 at 8-9.]

16

Again, the Court finds that Ms. Eve has waived any Fourth or Fourteenth Amendment claim for the use of excessive force by not including it in her Statement of Claims.[4]   Further, Ms. Eve's unreasonable seizure claim as it relates to her Resisting Law Enforcement charge is *Heck*-barred.  Here, Ms. Eve was convicted of Resisting Law Enforcement, appealed the conviction, and the conviction was upheld.  Allowing her to bring constitutional claims which require her to show that there was not probable cause to seize her would call her conviction into question, which is prohibited under *Heck*.  And the fact that Ms. Eve filed this lawsuit before that conviction is irrelevant – the conviction exists now and she may not challenge it through a § 1983 claim.

As for an unreasonable seizure claim related to her remaining charges, for which Ms. Eve has not been convicted, the Court finds that the Officers had probable cause to arrest Ms. Eve for those charges.  The Court has already found that Ms. Eve pushed Ms. Wilson's car door opened after being instructed to stay in the car, and that the door hit Officer McCorkle.  Ms. Eve's characterization of this as "incidental contact [that] her door made with the officer," [Filing No. 88 at 16], is her spin on what happened and is not corroborated by the video evidence.  Ms. Eve forcibly kicked the door, hitting Officer McCorkle, which gave the Officers probable cause to arrest her for Battery and that probable cause defeats her unreasonable seizure claim.  Further, although Ms. Eve repeatedly refers to being charged with "public intoxication" in her response brief, she was not – she was charged with Disorderly Conduct.  Any unreasonable seizure claim in connection with her arrest for "public intoxication" fails because she was not arrested for Public

---

[4] Perhaps Ms. Eve forfeited her excessive force claim because she can be heard on Officer McCorkle's dashcam video before she was able to exit the police car in which she was being detained saying that she was "hurting herself" as she tried to wiggle her way to open the door.  Any pain from the handcuffs appears to have been caused by her efforts to maneuver herself so that she could exit the police car.  And it is unlikely she would have been able to exit the police car if the handcuffs were too tight.

Intoxication. To the extent she meant to refer to her arrest for Disorderly Conduct, the Court need look no further than the video evidence. Ms. Eve's belligerent and combative actions and attitude during her encounter with the Officers, along with her attempt to interfere with their investigation into Ms. Wilson's erratic driving, provided the Officers with probable cause to arrest her for Disorderly Conduct. "Probable cause…acts as an absolute bar to a claim of unreasonable seizure," *McWilliams v. City of Chicago*, 2022 WL 135428, at *2 (7th Cir. Jan. 14, 2022), so Ms. Eve's unreasonable seizure claims – whether based on the Fourth or Fourteenth Amendment and whether related to her charges of Resisting Law Enforcement, Battery, or Disorderly Conduct – fail as a matter of law.

The Court **GRANTS** Defendants' Motion for Summary Judgment on Ms. Eve's Fourth and Fourteenth Amendment claims.

> 2.   *Ms. Wilson's Claims*

> a.   Individual Claims Against Officers Harrell, McCorkle, and Thomas

Defendants argue that the evidence shows that only Officer Burtron interacted with Ms. Wilson – "[h]e pulled over her vehicle, conducted her pre-exit and field sobriety tests, and transported her to jail." [Filing No. 80 at 15-16.] Consequently, they argue, Officers Harrell, McCorkle, and Thomas cannot be personally liable to Ms. Wilson for any alleged constitutional violations. [Filing No. 80 at 15-16.] Ms. Wilson does not respond to this argument in her response brief. [*See* Filing No. 88.] Accordingly, Ms. Wilson has waived any argument in opposition and has forfeited her constitutional claims against Officers Harrell, McCorkle, and Thomas. *See Bonte*, 624 F.3d at 466. In any event, Defendants are correct that liability under § 1983 requires personal involvement, *see Colbert*, 851 F.3d at 657, and that the evidence indicates that Officers Harrell,

McCorkle, and Thomas were not personally involved in the acts upon which Ms. Wilson bases her constitutional claims.

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Ms. Wilson's constitutional claims against Officers Harrell, McCorkle, and Thomas.

b.   First Amendment Claim Against Officer Burtron

Ms. Wilson alleges in the Complaint that she has "the right to freedom of association," which "includes the right to associate with and seek advice from lawyers of her choosing." [Filing No. 1 at 23.] She alleges that Officer Burtron interfered with that right when he detained Ms. Eve and that Ms. Eve's "side-of-the-road" lawyering is protected speech under the First Amendment. [Filing No. 1 at 24.] Her Statement of Claims sets forth this same categorization of her First Amendment claim. [Filing No. 75 at 2.]

In their Motion for Summary Judgment, Defendants argue that the Seventh Circuit has only recognized a First Amendment freedom of association claim when the association relates to freedom of expression. [Filing No. 80 at 21-22.] They assert that "[a]t the time of her arrest, [Ms.] Wilson was not engaged in an activity protected by the First Amendment." [Filing No. 80 at 22.] Defendants argue that even if Ms. Wilson and Ms. Eve were engaged in a protected activity, it was a permissible time, place, and manner restriction for the Officers to prohibit Ms. Eve from exiting the car. [Filing No. 80 at 23.] They also note that Ms. Wilson did not ask for a lawyer at any point during her interaction with Defendants and that "[Ms.] Wilson is essentially trying to repackage [Ms.] Eve's claim as her own because she never made any indication she was seeking to associate with or hear from [Ms.] Eve after [Ms.] Wilson was removed from the car." [Filing No. 80 at 23.]

In her response, Ms. Wilson argues that the First Amendment protects the right of an individual to consult with an attorney on any legal matter, and relies upon an Affidavit from Ms.

Eve and Ms. Eve's testimony from her criminal trial to assert that "Ms. Wilson asked Ms. Eve to be her lawyer after they were pulled over." [Filing No. 88 at 20.] She asserts that Officer Burtron violated her First Amendment rights "[b]y refusing to allow Ms. Wilson the ability to consult with Ms. Eve, the woman who was doing everything in her power to establish herself as Ms. Wilson's lawyer, to the point of arresting Ms. Eve and physically removing her from being able to even give Ms. Wilson advice on a legal matter from the side of the road." [Filing No. 88 at 21.]

In their reply, Defendants argue that Ms. Wilson's First Amendment right to consult with an attorney is not limitless, that their insistence that Ms. Eve – who was apparently intoxicated – stay in the car was a permissible time, place, and manner restriction, and that Ms. Wilson did not respond to that argument so has waived any opposition. [Filing No. 91 at 11.] Defendants reiterate their argument that there is no evidence that Ms. Wilson and Ms. Eve were engaged in any expressive association and that "[t]he First Amendment does not protect opportunities of association that do not pertain to expressive association, even if they might be described as 'associational' in common parlance[; rather i]t must be association for the advancement of beliefs and ideas." [Filing No. 91 at 11-12 (quotations and citations omitted).]

"The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000). Ms. Eve avers that Ms. Wilson asked her to be her attorney after Ms. Wilson was pulled over, and Ms. Eve stated that she was an attorney numerous times while the Officers were investigating Ms. Wilson. But notably, the dashcam and bodycam footage does not capture Ms. Wilson ever asking for an attorney or stating that Ms. Eve was her attorney during the entire incident.

In any event, even assuming Ms. Wilson had a First Amendment right to consult with Ms. Eve as her attorney and attempted to do so, Ms. Wilson's First Amendment right – similar to Ms. Eve's First Amendment right discussed above – is not limitless and can be "narrowly tailored to further vital government interests." *Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 842 (7th Cir. 2021). Ms. Wilson did not respond to Defendants' argument that the Officers permissibly limited her First Amendment right, so any argument in opposition is waived. *See Bonte*, 624 F.3d at 466. And here, it is clear that the limitation was reasonable. Ms. Eve was becoming increasingly belligerent, slurring her words, and refusing to stay inside the car after Officer Burtron ordered Ms. Wilson to exit the car. Ms. Eve ultimately forcibly pushed her car door into Officer McCorkle in an effort to exit the car. Officer Burtron's actions in prohibiting Ms. Eve from exiting the car after Ms. Wilson exited – which ultimately prevented Ms. Wilson from consulting with Ms. Eve – were narrowly tailored to ensure the Officers' and Ms. Eve's safety. Ms. Wilson's First Amendment claim fails as a matter of law, and the Court **GRANTS** Defendants' Motion for Summary Judgment on that claim.

c.     Fifth and Sixth Amendment Claims Against Officer Burtron

Ms. Wilson alleges in her Complaint that the Officers denied her the right to counsel in violation of the Fifth and Sixth Amendments by arresting her lawyer, Ms. Eve. [Filing No. 1 at 22-23.] She characterizes her claims the same way in her Statement of Claims. [Filing No. 75 at 2.]

Defendants argue in support of their Motion for Summary Judgment that Ms. Wilson does not identify how Officer Burtron violated her Fifth Amendment rights, but that they assume her Fifth Amendment claim is based on her right not to incriminate herself. [Filing No. 80 at 24.] They assert that Ms. Wilson was never subjected to a custodial interrogation during the OWI

investigation and was not interrogated during the field sobriety testing, so Officer Burtron was never required to issue her a *Miranda* warning.  [Filing No. 80 at 24.]  Additionally, Defendants note that nothing Ms. Wilson said to Officer Burtron was used against her in her criminal proceeding.  [Filing No. 80 at 25.]  As to Ms. Wilson's Sixth Amendment claim, Defendants argue that the Sixth Amendment right to counsel only attaches at the initiation of adversary judicial proceedings, so that claim fails.  [Filing No. 80 at 25-26.]

In her response, Ms. Wilson states "[u]nder the law of the Seventh Circuit as it stands, Defendants are probably correct regarding Ms. Wilson's Fifth and Sixth Amendment claims." [Filing No. 88 at 21.]  She then goes on to argue that the law should be applied differently because her attorney (Ms. Eve) was in her car with her, and that "while there are probably sound policy reasons for not allowing the suspected driver the time to phone an attorney and for that attorney to come to the side of the road, those policy reasons vanish when the attorney is already there and willing to help her client."  [Filing No. 88 at 23.]

Defendants argue in their reply that Ms. Wilson has conceded that her Fifth and Sixth Amendment claims fail, and that Ms. Wilson's claims focus more on Ms. Eve's actions.  [Filing No. 91 at 12-13.]

The Court agrees with Defendants' position and Ms. Wilson's statement that under Seventh Circuit law "as it stands" – which, of course, is the state of the law that the Court follows – her Fifth and Sixth Amendment claims fail as a matter of law.  The Fifth Amendment, which applies to states through the Fourteenth Amendment, protects an individual from self-incrimination.  U.S. Const. amend. V.  "To bring a successful Fifth Amendment claim, [a plaintiff] must show (1) that [her] confession was involuntary and coerced, and (2) that [her] confession was used against [her] in a criminal case."  *Mack v. City of Chicago*, 2023 WL 4744791, at *15 (N.D. Ill. July 25, 2023).

Here, Ms. Wilson did not confess, nor were any statements used against her in her criminal proceeding.  Further, to implicate *Miranda*, a defendant must be: (1) in custody; and (2) subjected to interrogation.  *See, e.g.*, *United States v. Patterson*, 826 F.3d 450, 454 (7th Cir. 2016).  Officer Burtron was not required to give Ms. Wilson a *Miranda* warning because he did not interrogate her during the stop.  Ms. Wilson's Fifth Amendment claim fails.

The Sixth Amendment guarantees an accused the right to assistance of counsel in all criminal proceedings.  U.S. Const. amend. VI.  "[T]he right to counsel attaches upon the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *United States v. Snyder*, 71 F.4th 555, 566 (7th Cir. 2023) (quotation and citation omitted).  Ms. Wilson had no Sixth Amendment right to counsel during the traffic stop, nor at any time before the criminal proceeding against her commenced.  Her Sixth Amendment claim is without merit.

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Ms. Wilson's Fifth and Sixth Amendment claims.

### 3.    *Qualified Immunity*

Defendants also argue that they are entitled to qualified immunity on all of Ms. Eve's and Ms. Wilson's constitutional claims because they did not violate the Constitution and even if they did, the constitutional rights at issue were not clearly established.  [Filing No. 80 at 28-30.]

Plaintiffs respond that qualified immunity "for law enforcement officers is a legal fiction," that they "recognize that this [C]ourt may consider itself bound by law assuming and adjudicating the availability of qualified immunity to police officers violating federal or constitutional mandates that are not 'clearly established,'" and that they make their arguments in "an effort to modify existing law."  [Filing No. 88 at 27-28.]  They argue that, in any event, Ms. Eve's right to be free

from retaliatory arrest was violated, that "there can be no question that the right to be free from excessive force and the right to be free from police making up probable cause on the spot are both rights that were clearly established in June 2019," and that Ms. Wilson's First Amendment right to consult with an attorney was clearly established.  [Filing No. 88 at 29-30.]

In their reply, Defendants argue that Plaintiffs "did not identify a closely analogous case establishing a right to be free from the alleged conduct or prove that the conduct…was so egregious that a reasonable person would only know their actions violated the constitution with guidance from the courts."  [Filing No. 91 at 14.]

"A public official is entitled to qualified immunity from suit unless he violated a clearly established constitutional right." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  Whether qualified immunity applies involves two questions, which may be addressed in either order: "(1) whether the facts alleged…by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Dockery*, 911 F.3d at 466.  "To show that a right is clearly established, the plaintiff must demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741); *see also District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) ("'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable officer would understand that what he is doing is unlawful.") (quotations and citations omitted).

As discussed above, Defendants did not violate Plaintiffs' constitutional rights.  The Court also notes that in her response to Defendants' qualified immunity argument, Ms. Eve only discusses her right to be free from retaliatory arrest and her right to be free from excessive force – both

24

claims that the Court has determined she waived by failing to include them in her Statement of Claims.  Additionally, Ms. Wilson only discusses her right to consult with an attorney which, as discussed above, the Defendants were justified in limiting based on the circumstances of this case.

In any event, even if Defendants violated Plaintiffs' constitutional rights, Plaintiffs have not provided any caselaw indicating that those rights were clearly established.  Plaintiffs cite general caselaw for the propositions that free speech is protected, there is a right to be free from retaliatory arrest for protected speech, there is a right to be free from arrest without probable cause, and there is a First Amendment right to consult with an attorney.  [Filing No. 88 at 29-30.]  But a plaintiff cannot escape the application of qualified immunity by defining in a general manner the constitutional right that she claims was violated.  *See City of Escondido, Cal. v. Emmons*, 586 U.S. ----, 139 S. Ct. 500, 503 (2019).  That is exactly what Plaintiffs have done here.  None of the cases Plaintiffs cite would have put the Officers on notice that detaining Ms. Eve – who happened to be an attorney – after she forcibly pushed the car door open and hit Officer McCorkle with the door, despite being lawfully instructed to stay in the car, was a violation of her constitutional rights.  And none of the cases Plaintiffs cite would have put the Officers on notice that doing so would also violate Ms. Wilson's constitutional rights.

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiffs' constitutional claims on the additional ground that the Officers are entitled to qualified immunity.

### C.    Failure to Intervene Claims

Both Ms. Eve and Ms. Wilson allege failure to intervene claims against Officers McCorkle, Thomas, and Harrell for failing to intervene in Officer Burtron "fabricating probable cause" against Ms. Eve so that she could be arrested, which in turn violated Ms. Wilson's right to an attorney. [Filing No. 1 at 20; Filing No. 1 at 26.]

25

Defendants argue in their Motion for Summary Judgment that Ms. Eve is barred by *Heck* from arguing that she was arrested without probable cause, and that Ms. Wilson's constitutional rights were never violated. [Filing No. 80 at 26-28.]

In their response, Plaintiffs argue that Officers McCorkle and Thomas "were present when Officer Burtron came up with the idea that the contact Ms. Eve's door made with one of the Officers as they let her out constituted battery," and that they did not "[tell] the truth," and say that "contact with the door was accidental." [Filing No. 88 at 24-25.] They assert that Officers Thomas, McCorkle, and Burtron[5] "could have stood up for Ms. Eve's First Amendment right to try to represent her client and not be arrested for doing so," "made sure that no excessive force was used in handcuffing Ms. Eve…[knowing] that Ms. Eve had visited a tattoo parlor that night and…that the plastic wrap on her wrist was from an hours-old tattoo," and "could have protected Ms. Wilson's First Amendment right to consult with her attorney on a legal matter." [Filing No. 88 at 25-26.] They contend that Officer Harrell "also could have made sure that both women's rights were protected." [Filing No. 88 at 25-26.]

In their reply, Defendants reiterate that probable cause existed to arrest Ms. Eve and that there were no underlying violations of either Ms. Eve's or Ms. Wilson's constitutional rights. [Filing No. 91 at 13.]

The Court will not belabor its discussion of Plaintiffs' failure to intervene claims. The first element of a failure to intervene claim is that the public official knows or has reason to know that the plaintiff's constitutional rights are being violated. *Doxtator v. O'Brien*, 39 F.4th 852, 864-65 (7th Cir. 2022). Because Defendants did not violate Plaintiffs' constitutional rights, Plaintiffs'

---

[5] Plaintiffs' references to Officer Burtron's alleged failure to intervene are confusing given that their failure to intervene claims are not asserted against him and are premised on the failure to intervene with his own alleged constitutional violations.

failure to intervene claims fail as a matter of law. *See Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("Though legally distinct, the fate of plaintiff's failure to intervene claim is closely linked to that of her [claim that defendant violated her constitutional rights] since, by definition, if there was no [constitutional violation] then there can be no failure to intervene.").

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiffs' failure to intervene claims.

### D.    *Monell* Claims

Plaintiffs allege that the City of Westfield and Chief Rush lacked adequate policies and procedures to "protect innocent people from excessive and unwarranted force by individual officers," to "protect the Constitutional rights of those interrogated by the Police," and to "protect the First Amendment rights of citizens," and that their lack of policies and procedures violated the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. [Filing No. 1 at 19-20; Filing No. 1 at 24-25.]

Defendants argue in support of their Motion for Summary Judgment that Plaintiffs' official capacity claims against Chief Rush are duplicative of their claims against the City of Westfield, that the City of Westfield cannot be vicariously liable for the actions of its employees, and that no constitutional violations occurred in any event. [Filing No. 80 at 30-31.] Defendants note that the City of Westfield has express policies that the Officers followed and that Plaintiffs have not shown that there was a widespread practice or custom that caused any alleged constitutional violations. [Filing No. 80 at 31-34.]

In their response, Plaintiffs point to instant messages between Officer Burtron and Officer Thomas which they claim indicate "that officers within the [WPD] kept track of their arrest 'numbers' and vied with each other to have the best stop-to-arrest ratio." [Filing No. 88 at 26.]

27

In their reply, Defendants reiterate that there were no constitutional violations and that "Officer Burtron's banter with his colleague in one series of instant messages" does not show that there was a widespread practice or custom that led to constitutional violations. [Filing No. 91 at 15-16.]

Plaintiffs' claim against Chief Rush in his official capacity is treated as a claim against the City of Westfield. *See Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992). And like Plaintiffs' failure to intervene claims, the absence of an underlying constitutional violation is fatal to Plaintiffs' *Monell* claims because "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiffs' *Monell* claims.

### E.     Ms. Eve's Claim Under the Indiana Constitution

Ms. Eve asserts a claim against all Defendants under Article 1, Section 11 of the Indiana Constitution for depriving her of her right to be free from an unreasonable seizure and under Article 1, Section 9 for interfering with her freedom of thought and speech. [Filing No. 1 at 22.] In her Statement of Claims, she limits this claim to one for violation of Article 1, Section 11 for an unreasonable seizure, [Filing No. 75 at 2], so the Court similarly limits her claim, *Jackson*, 838 F. App'x at 198.

Because it has granted summary judgment in favor of Defendants on all of Plaintiffs' federal claims, the Court must determine whether it will exercise supplemental jurisdiction over Ms. Eve's remaining state law claim. The Court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Tech, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see also* 28 U.S.C. § 1367(c) ("[T]he district court may decline to

exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction.").  When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quotation and citation omitted).

The Seventh Circuit has made it clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (quotations and citations omitted).  Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) [when] substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quotations and citation omitted).  Here, the Court determines in its discretion to retain supplemental jurisdiction over Ms. Eve's claim under the Indiana Constitution because, as discussed below, it is "absolutely clear" how that claim should be decided.  *Id.*

In support of their Motion for Summary Judgment, Defendants argue that Ms. Eve's unreasonable seizure claim under the Indiana Constitution is barred by *Heck*, as her Fourth Amendment claim was, because the Indiana Court of Appeals found in connection with her appeal of her Resisting Law Enforcement conviction that Defendants did not violate her right to be free from unreasonable seizures when they prevented her from opening Ms. Wilson's car door.  [Filing

No. 80 at 20-21.]  Moreover, Defendants argue, there is no statutory provision that gives Ms. Eve

a civil remedy for violation of Indiana's Constitution.  [Filing No. 80 at 21.]

Ms. Eve only addresses Article 1, Section 9 of the Indiana Constitution in her response

brief.  [Filing No. 88 at 17-19.]

In their reply, Defendants note that Ms. Eve only included a claim under Article 1, Section

11 of the Indiana Constitution in her Statement of Claims.  [Filing No. 91 at 10.]

As the Court has found above, Ms. Eve forfeited any claim under Article 1, Section 9 of

the Indiana Constitution by not including it in her Statement of Claims.  Further, Ms. Eve has not

responded to Defendants' argument that her claim under Article 1, Section 11 of the Indiana

Constitution is barred by *Heck*, and has waived any opposition to that argument.  *Bonte*, 624 F.3d

at 466.  In any event, even if Ms. Eve has a private right of action under Article 1, Section 11 of

the Indiana Constitution, the Court has already found that the Officers had probable cause for their

actions.

For all of those reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment

on Ms. Eve's claims under the Indiana Constitution.

### F.    Claims Against John Doe Officers 1-10

Plaintiffs name "John Doe Officers 1-10" as Defendants in their Complaint, alleging that

they are "law enforcement officers in the State of Indiana.  Their names are unknown at this time;

however, the complaint will be amended once they are identified."  [Filing No. 1 at 2.]  Bringing

suit against unnamed officers or "John Doe" defendants in federal court is generally disfavored by

the Seventh Circuit.  *Strauss v. City of Chi.*, 760 F.2d 765, 770 n.6 (7th Cir. 1985).  Plaintiffs have

made no effort to amend their Complaint to provide the identities of "John Doe Officers 1-10."

Accordingly, the Court *sua sponte* **DISMISSES** all claims against "John Doe Officers 1-10" **WITH PREJUDICE**.

## IV.
### CONCLUSION

Ms. Eve was under several mistaken assumptions regarding the law when she encountered Defendants on the evening of June 16, 2019. Most of those mistaken assumptions were premised on Ms. Eve's belief that she could act however she wanted because she was a lawyer. But as Judge Najjar noted during her criminal trial, Ms. Eve "just can't walk through the community doing whatever it is that [she] feel[s] like doing whenever it is that [she] feel[s] like doing it," and her behavior "as a lawyer, as a civilized person who was in the wrong,…should [have made her] take pause and stock in [herself]." [Filing No. 77-6 at 20.] Instead, the incorrect, stubborn, and alcohol-fueled insistence of a newly-admitted lawyer – which resulted in a criminal conviction, a losing appeal, and an indefinite suspension from the practice of law – continued to gain momentum and eventually led to the filing of this lawsuit. Ms. Wilson had a blood alcohol content of .235 on the evening of June 16, 2019 and was driving erratically, and Ms. Eve was belligerent, did not follow the instructions of the Officers on the scene, forcibly pushed a car door into one of the Officers, and then wriggled with handcuffs on enough to escape from the police car in which she was being detained. There was probable cause to arrest both Ms. Wilson and Ms. Eve, and Defendants did not violate their constitutional rights.

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. [77.] Final judgment shall enter accordingly.

Date: 12/11/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**